CASE 53—CONTESTED ELECTION—APRIL 28.

## Major v. Barker.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

|   99 | 305 |
|  104 | 711 |
|   99 | 305 |
| o107 | 451 |
|   99 | 305 |
| j112 |  31 |
| j112 |  49 |
| j112 |  51 |
|  112 |  64 |

1. ELECTIONS—DISABILITY OF VOTER—STATEMENT THEREOF ON OATH MANDATORY.—The provision of section 1475 of the Kentucky statutes requiring that a voter shall declare his disability on oath before his ballot can be marked for him by the clerk of the election, is mandatory to the voter, and a ballot so marked without the declaration on oath being made, is an illegal vote, and should be excluded.

2. ELECTIONS—BALLOTS SHOWN TO ANOTHER.—Ballots marked in the voting-booth's either by the clerk of election or in his presence, were ballots "shown to another" within the meaning of section 1474 of the Kentucky Statutes, and should not have been deposited in the box, and if so deposited were illegal votes.

3. ELECTION CONTEST—EVIDENCE OF VOTER AS TO HOW HE VOTED INCOMPETENT.—The evidence of a voter as to how he voted at an election is incompetent as well in a contested election case where relief is sought from fraud, as upon the trial of an indictment of an election officer for making a false return. (Commonwealth v. Barry.)

Vol. 99—20.

J. I. LANDES AND HARRY FERGUSON FOR APPELLANT.

1. It is provided by section 1475 Kentucky Statutes "that in case any person applying to vote shall declare upon oath that he is unable to mark his ballot it shall be *mandatory* on the clerk to mark his ballot in the presence of the other officers of election, and ballots otherwise marked shall be declared illegal and not counted."

2. The provision of section 1474 Kentucky Statutes prohibits the depositing of the ballot in the ballot box of any voter who shows his ballot to any person, after it has been marked, and any ballot thus deposited shall be declared illegal and not counted.

3. Testimony of voters to show how they voted in an action of contest based on the ground of fraud is *competent* and *admissible*, (Dixon v. Orr, 49 Ark., 238 (4 Am. St. Rep., 42); Boyer v. Teague, 106 N. C., 576 (19 Am. St. Rep., 599); Am. & Eng. Enc. of Law, Vol. 6, pages 426, 427, 430, 433; Johnson v. Commonwealth, 90 Ky. Rep., 57-8; McCrary on Elections, 3d edition, section 457, 468, 540, 541.)

4. The fact that officers of election leave their posts during voting hours does not require the votes cast at that precinct to be thrown out. (McCrary on Elections, section 137, 3d edition, 1887.)

C. H. BUSH AND JOE. McCARROLL FOR APPELLEE.

1. The statute requires all election officers to be appointed by the county court at the August term preceding the election, and the scratching out of the name of one who had been appointed at the proper time and inserting the name of another in the place thereof done in September was null and void, and the latter had no right to act. Besides, Allen, the last appointee, was not a housekeeper, as required by the statute.

2. It is true the statute requires a voter to make oath as to his disability before his ballot can be marked for him, but where the facts as to his disability are personally known to the election officers, the object of the statute is attained, and the oath is not necessary.

3. Where from considerations of public policy, voting is done by secret ballot, the courts will not authorize an investigation into the individual votes with a view to falsifying the returns made by the election officers. (Cooley's Const., Lim., side page 606, 5th edition; McCrary on Elections, sections 270 and 271,, sections 1467, 1468, 1471, 1479, 1472, 1474, 1569, 1570, 1571 Kentucky Statutes, 85 Ky., 600; Anderson v. Winfrey, 9 Ky. Law Rep., 184; Cowan v.

Major v. Barker.

Prowse, 93 Ky., 157; Hickman v. Hoffman, Hardin, 370; Slaugh-
ter v. McCain, 1 Mar., 485; Hoy v. McMurray, 1 Litt., 365; Scott
v. Marshall, 5 J. J. M., 434; Pribble v. Hall, 13 Bush, 62; Dowell
v. Mitchell, 82 Ky., 47; Ky. Stats., sec. 3760; Ramey v. Ratcliffe,
81 Ky., 469.)
4. Where in the absence of the clerk of the election and one of the
   judges the two remaining officers of election receive a number of
   votes and deposit the ballots in the box, and they are counted, the
   whole precinct should be thrown out, because there is no way of
   determining what the result would have been without those
   ballots.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

The parties to this appeal were candidates at the November election 1894, for the office of justice of the peace for the Longview district of Christian county.  Upon the face of the returns the Board of Canvassers found that appellee Barker received 443 votes, and appellant Major 371 votes, showing a majority of 72 in favor of Barker.  Appellant duly gave notice of contest of the election, setting forth three principal grounds of contest, and appellee gave a c unter notice, in which he relied upon certain irregularities which he claimed to have produced results favorable to appellant.  The county board decided the contest in favor of appellee, and its decision was affirmed by the circuit court.

Appellant's grounds of contest were based upon alleged irregularities occurring at the Gordonfield precinct (No. 10), which was one of five precincts included in the district, and were as follows:

1st. The officers of election permitted the ballots of four voters to be stamped openly on the table of the clerk of election without requiring them to state under oath any disability which prevented them from marking their own

ballots, and all of these ballots were so marked as to be counted and were counted for appellee.

2d. The clerk of that precinct accompanied eighteen voters into the voting booths and stamped or assisted those voters in stamping their ballots so that they should be counted for appellee.

3d. The officers at that precinct fraudulently counted forty-eight ballots for appellee which had been cast for appellant.

On the other hand the appellee, in his counter notice, relies on the fact that at the Longview precinct, which gave a majority for the appellant, a part of the officers absented themselves during part of the election hours, and that during the absence of the clerk one of the judges of the election acted in his place, and signed the clerk's name upon the back of the ballots.

There were some other grounds of contest urged by appellant, but they are immaterial except in so far as they tend to support the charge of fraud at the Gordonfield precinct.

Upon the first ground stated we are of opinion that the court should have sustained the contention of appellant and excluded from the count the ballots which were marked openly by the clerk of the election, without the statement under oath of disability required by the statute (section 1475 Kentucky Statutes). In our view the statute imperatively requires that the voter shall declare his disability *on oath* before his ballot can be marked for him by the clerk, and to permit the officers to assume, either from the voter's appearance or from their own alleged personal knowledge, that he is so disabled as to be unable to mark his own ballot, would be to open a door for wholesale evasion of the requirement of secrecy in the ballot. This rule may result in hard-

ship to the individual voter in cases where the officers are neglectful of their duty in requiring the oath of disability to be made, but the requirement that the voter shall take the oath before his ballot can be marked and deposited in order that he may be punished if he make a false declaration is in our judgment mandatory to the voter. A ballot so marked, without the declaration on oath being made, is an illegal vote and should be excluded.

So also with the ballots which were marked in the voting booths either by the clerk of election or in his presence. These ballots were clearly *shown to another person* within the meaning of section 1474, Kentucky Statutes. They were forbidden to be deposited in the box, and were illegal votes if so deposited.

The testimony of the clerk shows for whom they were marked, and they should, therefore, be excluded from the count. The conduct of the clerk was, moreover, a gross violation of official duty, which it is difficult to ascribe entirely to ignorance.

This brings us to the consideration of the testimony of forty-eight voters who, with greater or less degrees of clearness, testify that they voted for appellant at the Gordonfield precinct. But twelve votes were returned as cast for appellant there, and it is insisted that the remaining thirty-six should be deducted from appellee's majority and counted in favor of appellant, which, excluding the votes hereinbefore indicated, would give a majority in favor of appellant.

It was held in Commonwealth v. Barry, 33 S. W., 400, that such evidence was not admissible upon an indictment for making a false return, but it is insisted that a different rule should apply to a case like the present one, where relief is sought on the ground of fraud.

After full consideration of the question, we have concluded to adhere to the rule laid down in Commonwealth v. Barry. It is conceded that the voter can not be compelled by subpena to appear and testify how he marked his ballot. If he were permitted to so testify he could then be subjected to a moral compulsion from his party associates. One party might obtain from willing witnesses testimony which the other party would be powerless to rebut because unable to compel a statement of the truth. It is admitted that injustice may be done in individual cases by the application of this rule, but the consideration mentioned and the evident policy of the law that the secrecy of the ballot should be inviolable outweigh the occasional hardships.

As was said in the Barry case, "the election law provides ample means to prevent frauds and forgeries" if it is adhered to and enforced by the authorities.

The contention of appellant that the vote of the whole Gordonfield precinct should be thrown out on the ground of fraud can not be sustained. While the conduct of the election clerk in behalf of his brother, and other circumstances are calculated to give rise to grave suspicious, there is no sufficient evidence of fraud to justify us in disfranchising the voters of the entire precinct. And the grounds stated in the counter notice of appellee can not be sustained. The requirements of the statute which were violated by the officers at the Longview precinct were mandatory as to them but directory as to the electors, and there was no fraud or attempted fraud shown at that precinct.

Judgment affirmed.

Judge Paynter dissents.

Judge Landes did not sit in this case.